1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

STEVE MICHAEL COX,                          )
                                            )          3:08-cv-00110-BES-VPC
            Plaintiff,                      )
                                            )
      vs.                                   )          **REPORT AND RECOMMENDATION**
                                            )          **OF U.S. MAGISTRATE JUDGE**
                                            )
GLEN WHORTON, *et al*.,                     )
                                            )          April 30, 2009
            Defendants.                     )
_____     )

        This Report and Recommendation is made to the Honorable Brian E. Sandoval, United

States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to

28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#11).

Plaintiff opposed (#16), and defendants replied (#18).  For the reasons stated below, the court

recommends that defendants' motion to dismiss (#11) be granted in part and denied in part.

**I.  HISTORY & PROCEDURAL BACKGROUND**

        Plaintiff Steve Michael Cox ("plaintiff") is currently incarcerated by the Nevada

Department of Corrections ("NDOC") at Ely State Prison ("ESP") (#1, exh. F).  Plaintiff brings

this action pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his First, Eighth,

and Fourteenth Amendment rights while he was incarcerated at ESP. *Id*. p. 2.  Plaintiff names as

defendants E.K. McDaniel, ESP Warden; Adam Endel, ESP Associate Warden of Programs; R.

Chambliss, caseworker at ESP; Dr. Bishop, physician at ESP; Theodore D'Amico, NDOC

Medical Director; Boja Lemich, nurse at ESP; Sargent Prince, correctional officer at ESP; C.

Tripp, caseworker at ESP; Lieutenant Messick, correctional officer at ESP; R. Williams; S.

Smith, nurse at ESP; and Ross Miller, Nevada Secretary of State. *Id*. p. 3.

        Plaintiff originally commenced this action in the Seventh Judicial District Court of the

State of Nevada in and for the County of White Pine on August 22, 2006. *Id*. exh. A. Plaintiff

amended his complaint on February 17, 2008. *Id*. exh. F. Defendants then filed a petition for

removal and a motion for screening of plaintiff's complaint in this court (#s 1 & 3). Plaintiff's

complaint was removed and counts III, IV, and VI were dismissed during screening (#10). This included all claims against defendants Prince and Smith. After dismissals, Plaintiff's complaint includes five counts of alleged constitutional violations, as follows:

- <u>Count I</u> (First and Fourteenth Amendment rights) – Plaintiff alleges that on September 28, 2004, during a "general shakedown," defendant Chambliss confiscated a "4-year old dilapidated mattress." Plaintiff states that he had used empty ink cartridges to repair the mattress. However, defendant Chambliss issued a notice of charges against plaintiff for destroying state property. Plaintiff was charged $50 for the mattress. He claims that the mattress was worth no more than $5-10, and that he was illegally overcharged in violation of his Fourteenth Amendment due process rights. *Id*.

- <u>Count II</u> (First and Fourteenth Amendment rights)– Plaintiff alleges that during the same September 28, 2004, "general shakedown," defendant Messnick confiscated two of plaintiffs law books in retaliation for grievances and lawsuits plaintiff previously brought against him. *Id*. p. 9.

- <u>Count V</u> (First, Eighth, and Fourteenth Amendment rights) – Plaintiff alleges that from May 31, 2005 through November 30, 2005, defendant Williams denied him a meatless alternative diet (MAD). Plaintiff claims that defendants Williams, McDaniel, Endel, and Whorton allowed meat to be served on plaintiff's breakfast tray two to three times a week. Additionally, defendant Williams refused to give plaintiff and other MAD recipients their issue of side orders and would serve them two to three day old leftovers that were ground together in a "brown-gooey goop main entree" two to three times every two weeks. *Id*. p. 13. Plaintiff refused to eat the leftovers and the food on trays with meat, which caused weight loss, stomach pain, headaches, calcium deficiencies, memory loss, and fatigue. *Id*.

- <u>Count VII</u> (First, Eighth, and Fourteenth Amendment rights) – Plaintiff alleges that defendants terminated his psychiatric medication, Elavil, on August 29, 2005, in retaliation for his requesting a portable bedside lamp. *Id*. p. 16-17. Plaintiff claims that his Elavil prescription was reinstated after he filed a grievance and medical request, but that it was discontinued again shortly thereafter. *Id*. p. 17.

- <u>Count VIII</u> (First, Eighth, and Fourteenth Amendment rights) – Plaintiff alleges that on November 2, 2005, defendant Lemich refused him an annual medical exam. *Id*. p. 18. Plaintiff contends that defendant Lemich denied him his prescribed ambulatory aid, under the orders of defendants McDaniel and MacArthur. Specifically, defendant Lemich ordered the "escort officer to deny plaintiff his ambulatory aid/assistance, causing plaintiff to stumble, fall into exam room and table." *Id*. p. 19. Plaintiff alleges that defendant Lemich then shouted expletives

1   at him and refused him a medical exam and forced him to leave
2   without ambulatory aids. *Id*. Plaintiff also alleges that
    defendants McDaniels, MacArthur, and Lemich revoked his
3   ambulatory aids, using the denial of his medical exam as a
    justification. *Id*. Plaintiff asserts that the denial of ambulatory
4   care from August 2001 to August 2007 has caused him to suffer
    "severe, irreversible, bone, muscular ambulatory
5   complications/damages, etc." *Id*. Plaintiff also alleges that on
    July 26, 2006, he was scheduled for a medical exam to treat his
6   athlete's foot and "severe hip/spine-disjointed (left hip) ball
    joint, pelvis, etc. pains/complications," but defendant Lemich
7   again refused to treat him. *Id*. Plaintiff contends that defendant
    Lemich's denial of an exam was in retaliation for plaintiff's
8   filing a grievance against her related to the November 2, 2005
    incident. *Id*. p. 20.

9                      **II.  DISCUSSION & ANALYSIS**

10      **A.    Discussion**

11          **1.    Motion to Dismiss Standard**

12          When considering a motion to dismiss for failure to state a claim upon which relief can

13   be granted, all material allegations in the complaint are accepted as true and are construed in the

14   light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir.

15   1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). For the movant to succeed, it

16   must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that

17   would entitle him to relief. *Barnett*, 31 F. 3d at 816; *see also Rothman v. Vedder Park Mgt.*, 912

18   F.2d 315, 316 (9th Cir. 1990).

19          Under section 1983, a plaintiff must allege that (1) defendants subjected him to the

20   deprivation of a right, privilege or immunity guaranteed by the U.S. Constitution or U.S. law, and

21   (2) that the defendant acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988);

22   *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "'Conclusionary allegations,

23   unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights

24   Act.'" *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting

25   *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)). However, "the federal rules require

26   only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

27   *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (*citing* Fed.R.Civ.P.

28

                                                    3

8(a)).  The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  *Id*., *citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B.    Analysis

Defendants move to dismiss all counts of plaintiff's complaint. They argue, "Count VIII is barred by the statute of limitations and for Cox's failure to state a claim upon which relief may be granted. Defendants cannot be [su]ed in their official capacities. Finally, Nev. Rev. Stat. 41.010 is not applicable in this matter" (#11, p. 1).

### 1.    Nev. Rev. Stat. § 41.010

Plaintiff alleges "defendants negligently performed their functions pursuant to Nevada Revised Statute 41.010 et seq," in every count of his complaint. *Id*. p. 9. Defendants contend that this statute is not applicable because it is "only relevant to persons who present a claim against the State of Nevada for refund of an overpayment." *Id*. The court agrees that Nev. Rev. Stat. § 41.010 does not apply in this case, and plaintiff has more properly asserted his constitutional claims under 42 U.S.C. § 1983.

### 2.    Claims against defendants in their official capacities

Defendants contend that the court should dismiss the claims brought against them in their official capacities because they are immune from prosecution pursuant to the Eleventh Amendment (#11, p. 8). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit... against one of the United States by Citizens of another State... ."  U.S. Const. amend XI.  The Supreme Court has held that a suit against a state official in his or her official capacity is not suit against that official, but rather a suit against the official's office; therefore, an official acting in his or her official capacity is not a "person" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Since the state and its officials are not considered "persons" within the meaning of section 1983, "they cannot be held liable under the statute for money damages."  *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003)  However, when a state official is sued in his official capacity for prospective injunctive relief, he is considered a "person" for the purposes of Section

4

1   1983. *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).

2        In his amended complaint, plaintiff names all defendants in their individual and official

3   capacities (#1, exh. F, p. 21-22).  Plaintiff requests money damages in addition to injunctive

4   relief.  *Id*.  It is clear that defendants cannot be sued in their official capacities for money

5   damages. *Bank of Lake Tahoe*, 318 F.3d at 918. Therefore, plaintiff's claims for money damages

6   against defendants in their official capacities are dismissed.

7        **3.    Counts I and II**

8        Defendants do not address counts I or II directly, nor do they appear to seek dismissal of

9   these counts. Defendants generally assert that the statue of limitations has run, that plaintiff failed

10  to exhaust his administrative remedies, and that defendants were not personally involved in the

11  incidents described in plaintiff's complaint. If defendants intended that counts I and II were the

12  subject of their motion to dismiss, the motion is denied as to these counts for three reasons. First,

13  in counts I and II, plaintiff alleges violation of his First and Fourteenth Amendment rights during

14  an incident that occurred on September 28, 2004. Plaintiff filed his complaint in state court on

15  August 22, 2006; therefore, the statute of limitations did not run as of the date plaintiff filed his

16  complaint. Second, defendants have presented no evidence that plaintiff failed to exhaust, and

17  plaintiff refers to grievances related to the incidents in his complaint (#1, exh. F, p. 8-10). Third,

18  plaintiff alleges that defendants Chambliss, Messnick, Tripp, McDaniel, and Endel were

19  personally involved in confiscating his law books and in overcharging him for a mattress. *Id*.

20  Defendants' motion to dismiss (#11) is denied as to counts I and II.

21       **4.    Count V**

22       In count V, plaintiff alleges that defendant Williams denied him a meatless alternative diet

23  and served him two to three-day-old leftovers, which included non-meat items ground together

24  (#1, exh. F, p. 13). Additionally, defendants Williams, McDaniel, Endel, and Whorton allowed

25  meat to be included on his meatless food trays. *Id*.  Defendants ask that count V be dismissed

26  because plaintiff "fails to explain how defendants McDaniel, Endel, or Whorton had any personal

27  involvement in determining the items served on meatless alternative diet trays in 2005" (#11, p.

28  7). Defendants do not discuss defendant Williams's involvement, and plaintiff failed to respond

5

1    to this argument (#16).

2        There is no liability under Section 1983 unless there is some affirmative link or connection

3    between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976).

4    "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of

5    section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

6    perform an act which he is legally required to do that causes the deprivation of which the

7    complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Further, vague and

8    conclusory allegations concerning the involvement of official personnel in civil rights violations

9    are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "A supervisor

10   cannot be held personally liable under § 1983 for the constitutional deprivations caused by his

11   subordinates, absent his participation or direction in the deprivation." *Ybarra v. Reno*

12   *Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). "Supervisory liability

13   exists even without overt personal participation in the offensive act if supervisory officials

14   implement a policy so deficient that the policy itself is a repudiation of constitutional rights and

15   is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

16   1989), *quoting Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

17       Plaintiff's claims regarding the involvement of defendants McDaniel, Endel, and Whorton

18   are vague and conclusory at best. Plaintiff does not demonstrate that any of these defendants had

19   any personal involvement in determining the items to be served on meatless alternative trays. At

20   best, these defendants would be responsible as supervisors, but there is no supervisory liability

21   under section 1983. Therefore, plaintiff's claims against defendants McDaniel, Endel, and

22   Whorton in count V are dismissed.

23                    **(a)    Res Judicata**

24       As discussed above, in count V, plaintiff alleges that defendants allowed meat to be served

25   on his meatless alternative diet ("MAD") trays. Additionally, defendants refused to give plaintiff

26   his side orders such as gravy and condiments, which "were at times the only eatable items with

27   bread" (#1, exh. F, p. 13). Defendant Williams would also serve plaintiff three day old leftovers

28   that were ground together into a "brown-gooey goop main entree." *Id*. Although defendants make

                                          6

no mention of plaintiff's previous lawsuits, plaintiff has alleged similar facts to those in count V in a 2005 action, 3:05-cv-00421-HDM-RAM (hereinafter "*Cox I*"). The court summarized plaintiff's allegations: "In essence, Plaintiff alleges the following: illegal meats are served on MAD diet trays; the portion sizes are inadequate; Plaintiff is denied gravy, breads, crackers, condiments and reduced portions of peanut butter; Plaintiff is served 3-day left-over food; the main entree is "brown goop"; and there are "excess" daily servings of eggs, refined white breads, starches and carbohydrates which plaintiff claims are unhealthy and cancerous" (*Cox I*, #82, p. 7-8, adopted in full in #83, and judgment entered in #84). In *Cox I*, the court granted summary judgment for the defendants because plaintiff "failed to show Defendants acted with deliberate indifference to his serious medical needs or to his health and safety by serving Plaintiff an allegedly nutritionally inadequate MAD diet." *Id*. p. 9. The court found that plaintiff had not presented evidence to demonstrate he sought medical treatment for the alleged health problems caused by the MAD diet or that he suffered any medical problems due to the nutritional value of the MAD diet. *Id*. p. 8-9.

"In order to bar a later suit under the doctrine of *res judicata*, an adjudication must (1) involve the same "claim" as the later suit; (2) have reached a final judgment on the merits; and (3) involve the same parties or their privies." *Nordhorn v. Ladish Company, Inc*., 9 F.3d 1402, 1404 (9th Cir. 1993), *see also Sidhu v. Flecto Company*, 279 F.3d 896, 900 (9th Cir. 2002). The Ninth Circuit has also held that "the doctrine of *res judicata* (or claim preclusion) bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties... on the same cause of action." *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The court addresses each of these three issues in turn.

### 1.      Same Claim

To determine whether two suits involve the same claim, courts consider four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether the two suits involve infringement of the same right; (3) whether substantially the same evidence is presented in the two actions; and (4) whether the two suits arise out of the same transactional nucleus of facts."

1

*Sidhu*, 279 F.3d at 900.

2

3          First, no rights or interests established in *Cox I* would be impaired by prosecution of this

4    action. Summary judgment was granted for defendants in that action; therefore, plaintiff did not

5    establish any rights or interests. Second, the two suits involve infringement of the same rights.

6    Plaintiff alleged that his Eighth Amendment rights were violated in both actions. Third, plaintiff

7    has again not presented evidence of medical problems or treatment received due to the allegedly

8    nutritionally inadequate MAD diet. Defendants have not yet presented evidence in this case.

9    However, the court presumes they would present similar nutritional evidence as they presented in

10   *Cox I* (*see* #82, p. 8), as both cases involve the same allegations and facts and essentially the same

11   parties. Fourth, the two suits arise out of the same transactional nucleus of facts. The "time, cause,

12   and circumstances" of the claims in both actions are the same. *See Leon*, 464 F.3d at 962. Both of

13   plaintiff's claims involve the nutritional adequacy of the MAD meals he was served in 2005. He

14   uses much of the same language to describe the meals in both cases. Given that both of these cases

15   are based upon plaintiff's objection to the MAD meals he was served, both cases arise out of the

16   same transactional nucleus of facts.

17                                  **2.      final judgment on the merits**

18         The court's decision in *Cox I* was a final judgment on the merits. The court granted

19   summary judgment in favor of defendants and entered judgment accordingly (#84). Plaintiff's

20   appeal was dismissed for failure to perfect (#96). Therefore, the court's decision was a final

21   judgment on the merits.

22                                  **3.      Same Parties or their Privies**

23         Plaintiff has named additional parties in this case than were named in *Cox I*. However, both

24   suits are brought against various NDOC actors. Because all named defendants have been

25   employees of NDOC, there is privity among them. "There is privity between officers of the same

26   government so that a judgment in a suit between a party and a representative of the United States

27   is *res judicata* in relitigation of the same issue between that party and another officer of the

28   government." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992), *quoting*

1   *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03, 60 S. Ct. 907, 917 (1940).

2   Therefore, requirement three is satisfied because all defendants in both suits have been NDOC

3   employees, and as such, officers of the same government.

4        The court concludes that all three requirements of *res judicata* are satisfied; therefore, count

5   V of plaintiff's complaint is barred. Count V is dismissed as to all defendants, including defendant

6   Williams.

7             **5.**     **Count VII**

8        Plaintiff alleges that defendants terminated his psychiatric medication, Elavil, in retaliation

9   for his request for a portable bedside lamp (#1, exh. F, p. 17). He also claims that the Elavil was

10  reinstated shortly thereafter, but that it was discontinued again a few days later. *Id*. Defendants

11  once again respond that plaintiff failed to identify how defendants McDaniel, Endel, Whorton,

12  D'Amico, or Bishop were involved with the termination of the Elavil or with plaintiff's request

13  for a bedside lamp (#11, p. 7).  Additionally, defendants claim that plaintiff "alleges defendant

14  Bishop again terminated the Elavil once it was reinstated 'for non-medical custody! issues and

15  reasons'...However, [plaintiff] fails to state what non-medical reasons were provided. It is

16  impossible to determine defendant Bishop's alleged liability in this matter when it is not known

17  what was allegedly stated." *Id*.

18       The court incorporates its summary of the law pertaining to personal involvement and

19  section 1983 liability, *supra* section II.B.4.  Plaintiff does not specify how defendants McDaniel,

20  Endel, Whorton, or D'Amico were involved in his request for a portable lamp or in the termination

21  of his Elavil prescription. Plaintiff mentions them with respect to a grievance. However, he does

22  not discuss the outcome of the grievance or how any of the defendants responded (#1, exh. F, p.

23  17). By contrast, plaintiff does allege that defendant Bishop was deliberately indifferent to his

24  serious medical needs by starting and stopping his Elavil prescription. In a motion to dismiss, the

25  court must  accept all material allegations as true. Plaintiff alleges that defendant Bishop was in

26  some way involved in the decision to terminate and reinstate his Elavil. Therefore, defendants'

27  motion to dismiss is granted as to plaintiff's claims against defendants McDaniel, Endel, Whorton,

28  and D'Amico, and denied as to plaintiff's claims against defendant Bishop.

### 6.   Count VIII

The primary focus of defendants' motion to dismiss is on count VIII. Defendants raise three arguments with regard to count VIII. First, to the extent that plaintiff alleges defendants violated his Constitutional rights in 2001 or 2002, his claims are barred by the statute of limitations (#11, p. 5). Second, plaintiff did not exhaust his administrative remedies. *Id*. p. 5-6. Third, plaintiff failed to "allege a causal link between defendants McDaniels or McArthur, in their allegedly supervisory roles, and the alleged constitutional violation." *Id*. p. 8. Additionally, they claim defendant Miller should be dismissed because he was not personally involved in any way in the events alleged in plaintiff's complaint. *Id*. Plaintiff responds that his claims against defendant Lemich in count VIII are "timely" (#16, p. 3). He states that "this court properly ruled on count VIII in the 'granting' of plaintiff's complaint on count VIII's defendants/issues alleged to proceed on genuine issues...." *Id*., *citing* #10, p. 6-7. Defendants reiterate their original arguments in their reply (#18).

### (a)   Statute of Limitations

Defendants argue that several of plaintiff's allegations in count VIII are barred by the statue of limitations because plaintiff "appears to raise several allegations stemming from ambulatory aids in 2001 and 2002" (#11, p. 5).

To determine the statute of limitations for claims brought under Section 1983, courts should use the statute of limitations for personal injury actions in the state where the suit is brought. *See Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 1949 (1985) (stating that "§ 1983 claims are best characterized as personal injury actions" for purposes of the statute of limitations). In Nevada, there is a two year statute of limitations for personal injury actions. Nev. Rev. Stat. § 11.190(4)(e). Therefore, any injuries occurring before August 22, 2004, two years before plaintiff filed his complaint in state court, are barred by the statute of limitations, including any injuries occurring in 2001 and 2002.

Plaintiff raises multiple claims in count VIII. His allegations against defendant Lemich stem from incidents occurring on November 2, 2005 and July 26, 2006; therefore, they are not barred by the statute of limitations (#1, exh. F, p. 18-20). Plaintiff also alleges the defendants McDaniel

1    and MacArthur "illegally voided ambulatory aid/care in August 2001." *Id*. p. 18. He claims that

2    Drs. Samuelson and Sykes reinstated his ambulatory aids in December 2002, but that defendant

3    Lemich refused to provide him his prescribed ambulatory aid in 2005 pursuant to the orders of

4    defendants McDaniel and MacArthur. *Id*. Plaintiff claims he was denied ambulatory care from

5    August 2001 to August 2007. *Id*. p. 19.

6         Plaintiff's complaints against defendants McDaniel's and MacArthur's original revocation

7    of plaintiff's ambulatory aids in 2001 are barred by the statute of limitations; therefore, they are

8    dismissed. It also appears that plaintiff is alleging that although Drs. Samuelson and Sykes

9    reinstated his ambulatory aid prescription in 2002, defendants McDaniel and MacArthur prevented

10   him from receiving such aid starting in 2002. *Id*. As such, as early as 2002, plaintiff knew that

11   defendants were not providing him with an ambulatory aid even though Drs. Samuelson and Sykes

12   had prescribed one for him. Therefore, plaintiff's claims that defendants McDaniel and MacArthur

13   withheld his ambulatory aid after it was re-prescribed in 2002 are barred by the statue of

14   limitations, and are dismissed.

15                    **(b)        Exhaustion of Administrative Remedies**

16        Defendants next contend that plaintiff failed to exhaust his administrative remedies with

17   regard to the November 2, 2005 incident with defendant Lemich (#11, p. 5). Apparently, plaintiff

18   filed an informal grievance, which prison officials forwarded to the Inspector General's office for

19   investigation. *Id*. p. 5-6 and exh. A. Plaintiff agreed with the remedy provided and did not grieve

20   the incident further. *Id*.

21        The Prison Litigation Reform Act of 1996 (the "PLRA") amended 42 U.S.C. § 1997e to

22   provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of

23   this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

24   facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)

25   (2002).

26        Although once within the discretion of the district court, the exhaustion of administrative

27   remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need

28   not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534

                                              11

1   U.S. 516, 524 (2002), citing *Booth*, 532 U.S. at 739-40, n.5.  Even when the prisoner seeks

2   remedies not available in the administrative proceedings, notably money damages, exhaustion is

3   still required prior to filing suit.  *Booth*, 532 U.S. at 741.  Recent case law demonstrates that the

4   Supreme Court has strictly construed section 1997e(a).  *Id.* at 741, n.6 ("[w]e will not read futility

5   or other exceptions into statutory exhaustion requirements where Congress has provided

6   otherwise").

7          All administrative remedies must be exhausted before the action is "brought" by a prisoner.

8   In *Vaden v. Summerhill*, the Ninth Circuit adopted the Seventh Circuit rule that "an action is

9   'brought' for purposes of § 1997e(a) when the complaint is tendered to the district clerk." 449 F.3d

10   1047, 1050 (9th Cir. 2006). Additionally, the court must dismiss if exhaustion requirements are not

11   met when the suit is brought, "even if the plaintiff exhausts his administrative remedies while the

12   litigation is pending." *Id.*

13          Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional

14   requirement. As such, inmates are not required to specifically plead or demonstrate exhaustion in

15   their complaints. *Jones*, 127 S.Ct. at 921. Rather, it is the defendant's responsibility to raise failure

16   to exhaust as an affirmative defense.

17          The NDOC grievance procedure is governed by A.R. 740 (#66, exh. A). To exhaust

18   available remedies, A.R. 740 requires as follows: (1) an informal review process; (2) a first level

19   formal grievance appealing the informal grievance decision to the warden; and (3) a second level

20   grievance, which is decided by the Assistant Director of Operations. *Id*. A.R. 740 requires NDOC

21   officials to respond at each grievance level within a specified time period, beginning from the date

22   of receipt of the inmate's grievance. *Id*. Inmates are given six months to file an informal grievance

23   when the claims involve personal property damage or loss, personal injury, medical claims or any

24   other torts claims. *Id*., p. 14. Plaintiff then has five days after the return of a decision based on the

25   level of review to appeal the decision. *Id.*

26          The evidence demonstrates that plaintiff only filed an informal complaint (#11, exh A).

27   The outcome of the internal investigation regarding the November 2, 2005 incident is unclear.

28   However, the grievance time frames were suspended, and plaintiff could have filed an appeal at

a later time, but it appears that he chose not to do so. *Id*. Plaintiff does not address the failure to exhaust in his opposition (#16). Plaintiff failed to exhaust his administrative remedies with regard to his claims against defendant Lemich and the November 5, 2005 incident, as he agreed with the administrative remedy provided. Therefore, this section of count VIII is dismissed.

### (c)  Personal Involvement

Defendants assert that plaintiff's claims against defendants McDaniel, MacArthur, and Miller should be dismissed because plaintiff has not demonstrated that they were personally involved in any alleged deprivation of his constitutional rights (#11, p. 8). The court incorporates its summary of the law pertaining to personal involvement and section 1983 liability, *supra* section II.B.4.

Initially, the court agrees that plaintiff does not assert any specific allegations against defendant Miller. Plaintiff does not indicate how defendant Miller had any involvement in the incidents described in his complaint. Therefore, any claims plaintiff is attempting to assert against defendant Miller are dismissed.

In count VIII, plaintiff raises claims against defendants Lemich, McDaniel, MacArthur, Tripp, Endel, D'Amico, and Whorton. Only defendant Lemich was personally involved in the alleged deprivation of plaintiff's constitutional rights. The other defendants were only involved in the grievance process for the November 2, 2005 incident, and in referring plaintiff's grievance to the Inspector General's office (#1, exh. 7, p. 19). Plaintiff does not allege that defendants improperly conducted the grievance process. Plaintiff agreed with the grievance result. Therefore, plaintiff's claims against defendants McDaniel, MacArthur, Tripp, Endel, D'Amico, and Whorton in count VIII are dismissed. As previously stated, plaintiff's claim against defendant Lemich with regard to the November 2, 2005 incident is dismissed because plaintiff failed to exhaust his administrative remedies.

Therefore, after these dismissals, the only remaining claim in count VIII is that against defendant Lemich concerning the July 26, 2006 alleged retaliatory denial of medical care.

///

///

13

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

Defendants motion to dismiss is **granted** as to

- All claims against defendants Miller, McDaniel, MacArthur, Whorton, D'Amico, Endel, and Tripp, including those in count V, VII, and VIII.

- All claims brought against all remaining defendants in their official capacities for money damages.

- Count V - all claims against all defendants. These claims are barred by the doctrine of *res judicata*

- Count VIII - Plaintiff's Eighth Amendment claims against defendant Lemich with regard to the November 2, 2005 alleged denial of medical care. Plaintiff failed to exhaust his administrative remedies.

Defendants motion to dismiss is **denied** as to

- Counts I and II

- Count VII - Plaintiff's claims against defendant Bishop.

- Count VIII - Plaintiff's First and Eighth Amendment claims against defendant Lemich with regard to the July 26, 2006 alleged retaliatory denial of medical care.

As such, the court respectfully recommends that defendants' motion to dismiss (#11) be **GRANTED** in part and **DENIED** in part. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

1

## IV.  RECOMMENDATION

2    **IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#11) be

3    **GRANTED** in part and **DENIED** in part.

4    **DATED:** April 30, 2009.

5

6    _____

7    **UNITED STATES MAGISTRATE JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15